<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FRANK TAMMERA, SR.,

        Plaintiff,

v.

YITZ GROSSMAN, WERNER HAASE, and DAVID KATZ,

        Defendants.

Civ. No. 10-569 (DRD)

**O P I N I O N**

<u>**DEBEVOISE, Senior District Judge**</u>

    Plaintiff Frank Tammera, Sr. seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP") against Defendants Yitz Grossman, Werner Haase, and David Katz (collectively, "Defendants"). Based on Plaintiff's affidavit of indigence, the Court will grant Plaintiff's application to proceed IFP pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

    After reviewing the Complaint, the Court finds that it must be dismissed for failure to state a claim on which relief may be granted because all of Tammera's claims are time-barred. Therefore, Tammera's Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

## I. BACKGROUND

    The following factual allegations are taken from the Complaint, filed February 2, 2010, and for the purposes of this review alone, are accepted as true and construed in the light most favorable to Tammera. See <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).

Tammera was the founder and Chairman of the Board of Pure Tech International, Inc. ("PTI"), which he owned from approximately 1969 to 1989. In 1969 he revolutionized the plastic recycling industry with a novel technology known as the "Pure Tech Process." This technology created the post-consumer beverage bottle recycling industry.

Grossman read articles written about PTI and Tammera in trade publications and approached Tammera in 1989 with a business plan to take PTI public, to which Tammera agreed. The public offering raised seven million dollars by exploiting the merits of Tammera's established company and reputation.

Subsequently, Grossman and his associates usurped control of PTI. Katz misrepresented to officials that he was the President of PTI. That scheme allowed the Defendants to secretly change PTI's corporate bylaws. Three months after the public offering, the Defendants fired Tammera and garnished his 3,624, 072 share stock portfolio.

In 1989, Tammera initiated an eleven count civil suit against PTI's directors and officers in the Superior Court of New Jersey, Chancery Division, Morris County. Judge MacKenzie presided over the 80 day trial, which occurred over a six and a half year period.

During the discovery period in that matter, Tammera learned that Grossman had already been permanently barred in an action by the New York Stock Exchange. The investors and the SEC were unaware that Grossman had been barred. Tammera also learned that Grossman and Haase channeled the public investors' capital to undisclosed bank accounts and began to distribute the investors' capital for their own personal use. Judge MacKenzie ignored all of this information when Tammera's attorney presented it at trial.

During the trial, Judge MacKenzie allowed a merger between PTI and another company. Tammera's 3,445,574 shares of stock, with a market value of $22 per share, disappeared as a result of the merger. Tammera's stock portfolio was valued at $98 million.

Judge MacKenzie's 1996 decision awarded the Defendants with exclusive ownership and all rights to the company; he awarded Tammera approximately $44,000 and dismissed the complaint. Although Tammera requested the file from his case many times, the Judge did not release the information to him until nine months after the decision was issued. The delay caused Tammera to miss his opportunity to appeal the decision. At some point after the trial, the Defendants sold Pure Tech Corp. for $325 million.

Since 1996, Tammera has unsuccessfully attempted to reopen his original suit against the Defendants. Grossman was later indicted in 2003 and 2005. The 2003 three-count indictment charged Grossman with selling 5,600,000 shares of Pure Tech stock. This stock sale, from which he earned more than $27 million, occurred while the civil case initiated by Tammera was pending.

Tammera's Complaint in the present matter states three claims for relief against Grossman and his "accomplices," Haase and Katz: (1) for their theft of 3,624,072 shares of stock, (2) for their licensing of the process that Tammera invented, and (3) for failing to disclose information about a civil case against the Defendants that was decided in favor of other PTI shareholders while the case Tammera initiated in New Jersey was pending. Tammera seeks restitution equivalent to the value of his PTI stock at the time the Defendants took it from him. Tammera alleges that the Defendants owe him $89 million.

## II.  DISCUSSION

This Court must dismiss, at the earliest practicable time, IFP actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  The court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The court's inquiry "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

To state a claim for which relief may be granted, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic v. Twombly, 550 U.S. 544, 545 (2007).  The assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (in order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 129 S. Ct. at 1949.  Although for the

purposes of a motion to dismiss the court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

### B. Application to Proceed In Forma Pauperis

Title 28 U.S.C. § 1915 provides that, in order for a court to grant IFP, the litigant seeking such status must establish that he is unable to pay the costs of his suit. The decision to grant IFP turns on whether an applicant is economically eligible for such status. Huertas v. Marvel & Maloney, P.C., 255 Fed. Appx. 613, 614 (3d Cir. 2007) (citing Sinwell v. Shapp, 536 F.2d 15, 19 (3d Cir. 1976)). A person need not be absolutely destitute to proceed in IFP; however, an affiant must show the inability to pay the filing fees. Id. (citing Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948); Walker v. People Express Airlines, Inc., 886 F.2d 598, 601 (3d Cir. 1989)). The Court will grant Tammera's application and subsequently dismiss his claims for failure to state a claim on which relief may be granted.

It is difficult to decipher from Tammera's application whether some expenses, such as property taxes, are stated on a monthly or a yearly basis. The Court will give Tammera the benefit of the doubt since that portion of the form instructs that all figures should be stated at a monthly rate. Thus, the Court assumes, based on Tammera's application, that the figures cited as property taxes represent Tammera's monthly obligations. Tammera is 87 years old and his wife is 80.

Tammera and his wife's combined monthly income, totaling $2,632.92, includes: $825 income from a rental property, $142.92 from interest and dividends, and $1,665 from social

security.  Tammera's monthly expenses, totaling $13,465, include:  $3,500 property taxes on his income property, $9,000 in taxes on his residential property, $350 for utilities, $250 for food, $90 for medical expenses, $65 for gasoline, $205 for his wife's health insurance, and $5 for recreation.  Tammera and his wife's combined assets include:  $3,800 in a checking account, $800 in a savings account, $15,000 in CD Certificates, a residential property valued at $350,000, a rental property valued at $300,000, and a 2000 Mercury Grand Marquis worth $2,500.  His yearly expenses, totaling $5,119, include:  home maintenance costs of $4,500, homeowners' insurance of $580 per year, and $39 for his wife's life insurance.  Tammera's monthly expenses far exceed his monthly income.  Further, Tammera's wife has serious health problems and Tammera has taken out a reverse mortgage at a high interest rate to pay his property taxes.  The Court will allow Tammera to proceed without the prepayment of fees, cost or security.

**C.     Review of the Complaint Pursuant to 28 U.S.C. 1915(e)(2)**

The Complaint does not refer to any statute or doctrine under which Tammera claims relief.  Given that pro se complaints are to be construed liberally, the Court could view Tammera's Complaint as alleging a cause of action for securities fraud, common law fraud, conspiracy to defraud, civil conspiracy, breach of contract and breach of fiduciary duties.  See Weaver v. Wilcox, 650 F.2d 22, 26 (3d Cir. 1981) (construing pro se complaint as stating a cause of action under § 1983).  It does not appear that the Court has diversity jurisdiction over the claims in this suit.  Although the amount in controversy is certainly in excess of $75,000.00, exclusive of interests and costs, it does not appear from the Complaint that there is diversity of citizenship.  See 28 U.S.C. § 1332.  However, a securities fraud claim gives the Court original federal question jurisdiction, 15 U.S.C. § 78aa; 28 U.S.C. § 1331, and the Court has

6

supplemental jurisdiction over Tammera's state law claims under 28 U.S.C. § 1367, since all of his claims arise from a common nucleus of operative facts.

The Court must dismiss the Complaint for two reasons.  First, any claims based on alleged errors of the New Jersey State Courts are precluded by the Rooker-Feldman doctrine.  Second, all of Tammera's claims are time barred by the various statutes of limitations since the wrong of which he complains occurred in 1989 when the Defendants allegedly usurped the company and stole his stock from him.  Therefore, the Court will dismiss the Complaint in its entirety for failure to state a claim for which relief may be granted.

The Complaint refers in multiple instances to errors that Tammera believes the New Jersey Superior Court committed in reaching its 1996 decision.  For example, he stated that the Superior Court "ignored" certain evidence and was dilatory in releasing the trial court documents to Tammera so that he could file an appeal.  Under the Rooker-Feldman doctrine, the correction of such errors, if committed, is properly the purview of the Supreme Court of New Jersey, and is outside the jurisdiction of this court.  As stated by the Supreme Court of the United States in one of the two cases giving rise to that rule, Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923):

> Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of [a Constitutional character].  To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original.

Put differently, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463 (2006).  Thus, this court is powerless to reverse the rulings of the New Jersey Courts, and the claims in the pending action which challenge previous rulings by the New Jersey Courts must be dismissed.

As for the various statutes of limitations, the Court will take each of what it views as Tammera's potential claims in turn. Pursuant to 28 U.S.C. § 1658(b)(2), fraud-based claims under federal securities laws are subject to a two-year statute of limitations and a five-year statute of repose:

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of—
> (1) 2 years after the discovery of the facts constituting the violation; or
> (2) 5 years after such violation.

28 U.S.C. § 1658(b). Unlike the two-year statute of limitations, which begins to run after the cause of action accrues, the five-year period beginning at the time of the violation is a statute of repose meant to serve as a cutoff for a cause of action. Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991) (construing the statute under the previous one- and three-year structure). The Lampf Court viewed the three-year limit as a "period of repose," intended to impose an "outside limit" not subject to tolling principles. Id. at 363 (citation omitted). As the Supreme Court stated:

> The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year limit is a period of repose inconsistent with tolling ... Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period.

Id. Thus, tolling principles do not apply to the five-year statute of repose. By its terms, the repose period in § 1658(b)(2) begins to run on the date of the alleged violation. Since the wrong allegedly perpetrated by the Defendants occurred in 1989, the statute of repose began to run in 1989 and Tammera's claim has long been time-barred.

Although it is not necessary to determine when the statute of limitations ran, since § 1658(b) provides that the claim may not be brought after the earlier of the end of either period,

the court will also examine the statute of limitations.  The two-year statute of limitations accrues when a plaintiff discovers the facts constituting the violation.  28 U.S.C. § 1658(b).  In the Complaint, Tammera titled paragraphs one and two as "[n]ew evidence relevant to the above matter reveals a FRAUD has been committed…in cases filed in 2003 and 2005" and "[n]ew evidence relevant…Federal Agents seize Yitz Grossman's computer."  Tammera seems to allege that the Court should allow his claims because in 2003 and 2005 he discovered new evidence of the fraud perpetrated on him by the Defendants.

The fact that Tammera claims not to have known every detail about the Defendants' fraud in 1989 is irrelevant.  "Plaintiffs cannot avoid the time bar simply by claiming they lacked knowledge of the details for narrow aspects of the alleged fraud.  Rather, the clock starts when they should have discovered the general fraudulent scheme."  Id.  In 1989, Tammera knew that the Defendants had wrongfully lied to him, fired him and refused to reimburse him for the stock he owned.  He had enough information in 1989 to file a suit in state court; therefore, the Court has no reason to believe that Tammera did not know of the general fraudulent scheme in 1989 when he initiated the original suit.  Any fraud-based securities claim Tammera may be making is time-barred and must be dismissed.

The Court will turn now to Tammera's state law claims, beginning with common law fraud.  The statute of limitations applicable to common law fraud actions under New Jersey law is six years.  N.J. Stat. Ann. § 2A:14-1 (providing a six-year statute for "any tortious injury to real or personal property"); Roberts v. Magnetic Metals Co., 611 F.2d 450, 453 (3d Cir. 1979).  A cause of action accrues when the plaintiff knew or should have known of its existence.  Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 425 (3d Cir. 1999).  When the gist of the action is fraud concealed from the plaintiff, the statute

begins to run on discovery of the wrong or of facts that reasonably should lead the plaintiff to inquire into the fraud. Id. (citing Lopez v. Swyer, 62 N.J. 267 (1973)). Here, Tammera's cause of action for common law fraud accrued in 1989. At that point, he knew he had been wronged and he actually did inquire into the fraud, by filing a lawsuit against the Defendants in state court. It is clear that the six-year statute of limitations on any common law fraud claim expired many years ago.

The Court will now turn to the claim of conspiracy to defraud. Under New Jersey law, a civil conspiracy is a "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, a principal element of which is to inflict a wrong against or injury upon another, and an overt act that results in damage." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005). In New Jersey, the statute of limitations for "any tortious injury to real or personal property" is six years. See N.J. Stat. Ann. § 2A:14-1. As with common law fraud, the cause of action accrues when the plaintiff knew or should have known of its existence. Southern Cross Overseas Agencies, 181 F.3d at 425. When the gist of the action is fraud concealed from the plaintiff, the statute begins to run on discovery of the wrong or of facts that reasonably should lead the plaintiff to inquire into the fraud. Id. (citing Lopez v. Swyer, 62 N.J. at 267). Tammera knew enough about these Defendants' coordinated activities to injure him that in 1989 he filed suit against them. Thus, the six-year statute of limitations has long since expired and Tammera's claim is stale. The Court must dismiss it.

Tammera used the term racketeering in the Complaint. The statute of limitations for a civil conspiracy under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., is four years. Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 166, 173 (D.N.J. 1998). The "injury and pattern discovery rule" runs from the date the plaintiff knew or

should have known that the elements of a civil RICO cause of action existed.  Klehr v. A.O. Smith Corp., 521 U.S. 179, 186 (1997).  The elements of a RICO claim are (1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity.  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985).  A private plaintiff must also allege injury to his/her business or property to confer standing. See Id. at 496.  It is injury, not racketeering activity, which triggers the accrual of the statute of limitations for a RICO action. Landy v. Mitchell Petroleum Technology Corp., 734 F. Supp. 608 (S.D.N.Y. 1990).  "Thus, the issue becomes when plaintiffs knew or should have known that defendants conducted an enterprise through a pattern of racketeering activity which injured their business or property."  Gunter, 32 F. Supp. 2d at 174.  Again, Tammera knew of the injury and knew enough about these Defendants' coordinated activities that in 1989 he filed suit against them.  Thus, his cause of action accrued in 1989 and any civil RICO claim at this late date is long time-barred.

Finally, claims for breach of contract and breach of fiduciary duty under New Jersey law are governed by the same six-year statute of limitations described above in relation to the civil conspiracy claim.  See N.J. Stat. Ann. § 2A:14-1 (providing a six-year statute for "any tortious injury to real or personal property"); Green v. Selective Ins. Co. of Am., 144 N.J. 344, 360 (1996) (breach of contract); Dynasty Bldg. Corp. v. Ackerman, 376 N.J. Super. 280, 282 (2005) (fiduciary claim).  This claim is barred for the same reasons described in the context of the New Jersey law civil conspiracy claim.

### III.  CONCLUSION

For all the foregoing reasons, Tammera's claims are dismissed without prejudice.  All of Tammera's claims are either stale or barred by the <u>Rooker-Feldman</u> doctrine. The court will enter an order implementing this opinion.

                                                  **s/ Dickinson R. Debevoise**
                                                  DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: March 29, 2010